UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

TERESA PLEINIS,

    Plaintiff,

v.                                     Case No.:  8:21-cv-2724-DNF

COMMISSIONER OF SOCIAL
SECURITY,

    Defendant.

## OPINION AND ORDER

Plaintiff Teresa Pleinis seeks judicial review of the final decision of the Commissioner of the Social Security Administration ("SSA") denying her claim for a period of disability and disability insurance benefits. The Commissioner filed the Transcript of the proceedings ("Tr." followed by the appropriate page number), and the parties filed legal memoranda setting forth their positions. Plaintiff also filed a Rely Memorandum (Doc. 16). As explained below, the decision of the Commissioner is **AFFIRMED** pursuant to § 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

## I.     Social Security Act Eligibility, Standard of Review, Procedural History, and the ALJ's Decision

### A.     Social Security Eligibility

The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 416(i), 423(d)(1)(A), 1382c(a)(3)(A); 20 C.F.R. §§ 404.1505(a), 416.905(a). The impairment must be severe, making the claimant unable to do her previous work, or any other substantial gainful activity which exists in the national economy. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(A); 20 C.F.R. §§ 404.1505-404.1511, 416.905-416.911.

### B.     Standard of Review

The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion. Even if the evidence preponderated against the Commissioner's findings, we must affirm if the decision reached is supported by substantial evidence." *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004). In conducting this review, this Court may not reweigh the evidence or substitute its judgment for that of the ALJ, but must consider the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision.

*Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011) (citation omitted); *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995); *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990). Unlike findings of fact, the Commissioner's conclusions of law are not presumed valid and are reviewed under a de novo standard. *Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994); *Maldonado v. Comm'r of Soc. Sec.*, No. 20-14331, 2021 WL 2838362, at *2 (11th Cir. July 8, 2021); *Martin*, 894 F.2d at 1529. "The [Commissioner's] failure to apply the correct law or to provide the reviewing court with sufficient reasoning for determining that the proper legal analysis has been conducted mandates reversal." *Keeton*, 21 F.3d at 1066.

The ALJ must follow five steps in evaluating a claim of disability. 20 C.F.R. §§ 404.1520, 416.920. At the first step, the ALJ must determine whether the claimant is currently engaged in substantial gainful employment. 20 C.F.R. § 404.1520(a)(4)(i), (b); 20 C.F.R. § 416.920(a)(4)(i), (b). At step two, the ALJ must determine whether the impairment or combination of impairments from which the claimant allegedly suffers is "severe." 20 C.F.R. § 404.1520(a)(4)(ii), (c); 20 C.F.R. § 416.920(a)(4)(ii), (c). At step three, the ALJ must decide whether the claimant's severe impairments meet or medically equal a listed impairment. 20 C.F.R. § 404.1520(a)(4)(iii), (d); 20 C.F.R. § 416.920(a)(4)(iii), (d). If the ALJ finds the claimant's severe impairments do not meet or medically equal a listed impairment,

then the ALJ must determine whether the claimant has the residual functional capacity ("RFC") to perform her past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv), (e)–(f); 20 C.F.R. § 416.920(a)(4)(iv), (e)–(f).

If the claimant cannot perform past relevant work, the ALJ must determine at step five whether the claimant's RFC permits her to perform other work that exists in the national economy. 20 C.F.R. §§ 404.1520(a)(4)(v), (g), 416.920(a)(4)(v), (g). At the fifth step, there are two ways in which the ALJ may establish whether the claimant is capable of performing other work available in the national economy. The first is by applying the Medical Vocational Guidelines, and the second is by the use of a vocational expert. *Phillips v. Barnhart*, 357 F.3d 1232, 1239-40 (11th Cir. 2004); *Atha v. Comm'r, Soc. Sec. Admin.*, 616 F. App'x 931, 933 (11th Cir. 2015).

The claimant bears the burden of proof through step four. *Atha*, 616 F. App'x at 933. If the claimant meets this burden, then the burden temporarily shifts to the Commissioner to establish the fifth step. *Id.*; 20 C.F.R. § 404.1520(a)(4)(v), (g); 20 C.F.R. § 416.920(a)(4)(v), (g). If the Commissioner presents evidence of other work that exists in significant numbers in the national economy that the claimant is able to perform, only then does the burden shift back to the claimant to prove she is unable to perform these jobs. *Atha*, 616 F. App'x at 993.

### C. Procedural History

Plaintiff filed an application for a period of disability and disability insurance on November 18, 2019, alleging disability beginning on November 1, 2017. (Tr. 108, 230-31). The applications were denied initially and on reconsideration. (Tr. 108, 133). Plaintiff requested a hearing, and on August 24, 2020, a hearing was held before Administrative Law Judge Margaret Craig ("ALJ"). (Tr. 40-86). The ALJ convened a supplemental hearing on February 22, 2021. (Tr. 3653-73). On May 26, 2021, the ALJ entered a decision finding Plaintiff not under a disability from November 1, 2017, through the date of the decision. (Tr. 15-30).

Plaintiff requested review of the decision, but the Appeals Council denied Plaintiff's request on September 20, 2021. (Tr. 1-5). Plaintiff initiated the instant action by Complaint (Doc. 1) filed on November 19, 2021, and the case is ripe for review. The parties consented to proceed before a United States Magistrate Judge for all proceedings. (Doc. 12).

### D. Summary of ALJ's Decision

In this matter, the ALJ found Plaintiff met the insured status requirements of the Social Security Act through December 31, 2022. (Tr. 18). At step one of the sequential evaluation, the ALJ found that Plaintiff had not engaged in substantial gainful activity since November 1, 2017, the alleged onset date. (Tr. 18). At step two, the ALJ found that Plaintiff had the following severe impairments:

"degenerative disc disease/degenerative joint disease, spine; degenerative joint disease, knees; asthma; carpal tunnel syndrome; hyperthyroidism; urinary dysfunction; plantar fasciitis; migraine headaches; obesity; depressive disorder, NOS; anxiety disorder, NOS; and trauma and stressor related disorder." (Tr. 18). At step three, the ALJ found Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of any of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525, and 404.1526). (Tr. 18).

Before proceeding to step four, the ALJ found that Plaintiff had the following RFC:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 [C.F.R. §] 404.1567(b) except she can occasionally climb ramps or stairs, but can never climb ladders, ropes, or scaffolds. She can occasionally balance, stoop, kneel, crouch, and crawl. She can frequently handle, finger, and feel with the bilateral upper extremities; and can frequently operate foot controls with the bilateral lower extremities. She must avoid concentrated exposure to temperature extremes, wetness, noise, vibration, pulmonary irritants, and hazards. Her work environment must offer easy access to a restroom (she requires restroom breaks approximately every 50 minutes, for approximately 5 minutes each time). The claimant can understand, carry out, and remember simple, routine, and repetitive tasks; involving only simple, work-related decisions with the ability to adapt to routine work[-]place changes. She is unable to perform fast-paced or production line work requiring strict quotas. She can occasionally interact with the public, co-workers, and supervisors.

(Tr. 21-22).

At step four, the ALJ determined that Plaintiff was unable to perform her past relevant work as a comptroller in the army. (Tr. 28, 48). At step five, the ALJ found that considering Plaintiff's age (45 years old on the alleged disability onset date), education (at least high school), work experience, and RFC, there were jobs that existed in significant numbers in the national economy that Plaintiff could perform. (Tr. 28-29). Specifically, in Vocational Interrogatories, the vocational expert found that a person with Plaintiff's limitations could perform such occupations as:

(1) office helper, DOT 239.567-010,[1] light, SVP 2

(2) marker, DOT 209.587-034, light, SPV 2

(3) cleaner, DOT 323.687-014, light, SPV 2

(Tr. 29). The ALJ concluded that Plaintiff had not been under a disability from November 1, 2017, through the date of the decision. (Tr. 30).

## II.   Analysis

On appeal, Plaintiff raises two issues. As stated by Plaintiff, they are: (1) whether the ALJ properly evaluated the opinion of Plaintiff's treating physician, Dr. Perez-Padilla; and (2) whether the ALJ properly evaluated the opinion of Plaintiff's treating psychologist, Dr. John Berg. (Doc. 14, p. 3, 8).

---

[1] DOT refers to the *Dictionary of Occupational Titles*.

The same legal standard applies to the evaluation of both these opinions. The regulations for disability cases filed after March 27, 2017 – such as this one – changed and an ALJ no longer defers or gives any specific evidentiary weight to a medical opinion. 20 C.F.R. § 404.1520c(a), 20 C.F.R. § 416.920c(a). Thus, an ALJ no longer uses the term "treating source" and does not defer or give specific evidentiary weight, including controlling weight, to any medical opinion or prior administrative medical finding. *Torres v. Comm'r of Soc. Sec.*, No. 6:19-cv-1662-ORL-PDB, 2020 WL 5810273, at *2 (M.D. Fla. Sept. 30, 2020) (citing 20 C.F.R. § 404.1520c(a)).

Instead, an ALJ assesses the persuasiveness of a medical source's opinions given the following five factors, with the first two being the most important: (1) supportability; (2) consistency; (3) relationship with the claimant, including the length, frequency, and purpose of the examining and any treatment relationship; (4) specialization; and (5) other factors, such as the source's familiarity with other evidence concerning the claim, that tend to support or contradict the medical opinion. 20 C.F.R. § 404.1520c(a)-(c); 20 C.F.R. § 416.920c(a)-(c). An ALJ may but is not required to explain how he considers factors other than supportability and consistency, unless two or more opinions are equally persuasive on the same issue. 20 C.F.R. § 404.1520c(b)(2); 20 C.F.R. § 416.920c(b)(2).

For supportability, the revised rules provide: "The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." 20 C.F.R. § 404.1520c(c)(1); 20 C.F.R. § 416.920c(c)(1). For consistency, the revised rules provide: "The more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." 20 C.F.R. § 404.1520c(c)(2); 20 C.F.R. § 416.920c(c)(2).

The new regulations also differentiate between medical opinions and "other medical evidence." 20 C.F.R. §§ 404.1513(a)(2)-(3), 416.913(a)(2)-(3). "A medical opinion is a statement from a medical source about what you can still do despite your impairment(s) and whether you have one or more impairment-related limitations or restrictions" in the abilities listed in paragraphs (a)(2)(i) through (iv). 20 C.F.R. §§ 404.1513(a)(2), 416.913(a)(2). "Other medical evidence is evidence from a medical source that is not objective medical evidence or a medical opinion, including judgments about the nature and severity of your impairments, your medical history, clinical findings, diagnosis, treatment prescribed with response, or prognosis." 20 C.F.R. §§ 404.1513(a)(3), 416.913(a)(3).

### A. Sonia M. Perez-Padilla, M.D.'s Opinion

Plaintiff argues that the ALJ did not adequately evaluate Dr. Perez-Padilla's opinion. (Doc. 16, p. 1). Plaintiff claims that the ALJ's reasons for finding Dr. Perez-Padilla's opinion unpersuasive are not supported by substantial evidence. (Doc. 16, p. 2-3).

Plaintiff began treatment with Dr. Perez-Padilla as a primary care physician in December 2019. (Tr. 1885-91). In the decision, the ALJ summarized Dr. Perez-Padilla's opinion on Plaintiff's limitations and found her opinion not persuasive:

> Sonia Perez-Padilla, M.D. opined the claimant could sit 3 hours, 20 minutes at a time; stand and walk 2 hours, 15-25 minutes at a time. She said the claimant can lift 10 pounds infrequently. The claimant must lie down 2 hours during the day. She must rest for 20 minutes for every 20-30 minutes of work. The claimant would miss more than 4 days of work per month. (Ex. 28F). This is not persuasive. The opinion is not supported; Dr. Perez-Padilla merely checked off boxes on a form rather than provide an explanation for the limitations given. The opinion is also overly restrictive in light of objective evidence, and appears to be based on the claimant's subjective self-reporting. Treatment records show gait is normal and independent. (Ex. 13F/16). Muscle strength is 5/5 in all compartments of the bilateral lower extremities. (Ex. 18F/44).

(Tr. 26). Basically, the ALJ found Dr. Perez-Padilla's opinion unpersuasive for two reasons: (1) Dr. Perez-Padilla merely checked off boxed on a form and did not provide an explanation for the limitations given; and (2) her opinion was overly restrictive given the objective evidence and appeared to be based on Plaintiff's subjective complaints. (Tr. 26).

Plaintiff first argues that Dr. Perez-Padilla did not simply check boxes on a form, but also provided a medical explanation for the limitations she assessed. (Doc. 14, p. 4, Doc. 16, p. 3). Plaintiff cites the portion of the opinion that requests the medical provider to list the diagnosis of the problems that caused Plaintiff's limitations and restrictions, and requested objective, clinical or other specific findings that support the diagnosis and opinion. (Doc. 14, p. 4-5). In this portion of the opinion, Dr. Perez-Padilla wrote Plaintiff had pain and stiffness in her back, neck, knees, elbows, wrists, and feet. (Tr. 2506). Her carpal tunnel syndrome affected her writing, typing, driving, lifting, and strength. (Tr. 2506). She suffered from regular migraine headaches, urinary incontinence, and breathing problems with asthma. (Tr. 2506). She also wrote that Plaintiff required referrals to a pain clinic, urology, podiatry, and required adaptive equipment for driving and for home as well as multiple medications. (Tr. 2506). While Dr. Perez-Padilla lists Plaintiff's many diagnoses and problems, she did not explain how these conditions resulted in the severe limitations in the opinion nor did Dr. Perez-Padilla cite objective clinical findings that support her opinion. And both the lack of explanation and lack of objective clinical findings supports the ALJ's reasoning that Dr. Perez-Padilla's opinion was unsupported by her own treatment records.

Plaintiff next argues that the ALJ did not adequately consider whether Dr. Perez-Padilla's opinion was consistent with the totality of the evidence. (Doc. 14, p.

5). Contrary to Plaintiff's argument, the ALJ considered the totality of the evidence. (Tr. 26). In the decision, the ALJ noted Plaintiff's reported knee pain, but also noted that her strength in the bilateral lower extremities was normal, her knee range of motion was within normal limits, and she had no problems with balance. (Tr. 23). The ALJ included limitations in the RFC for light work with frequent operation of foot controls bilaterally to accommodate these conditions. (Tr. 23).

The ALJ also discussed Plaintiff's plantar fasciitis. (Tr. 23). While the ALJ recognized that this impairment may limit the time Plaintiff could be on her feet, she noted that foot braces worn at night helped, and also noted that Plaintiff's muscle strength for all pedal muscle groups was 5/5, her gait was grossly normal, and she does not use assistive devices. (Tr. 23).

The ALJ then discussed Plaintiff's carpal tunnel syndrome and wrist issues. (Tr. 23-24). The ALJ noted Plaintiff's symptoms and testing for carpal tunnel syndrome, and also noted that before surgery, Plaintiff had full strength in the left upper extremity and weakness on the right. (Tr. 23). After surgery, the ALJ noted that Plaintiff had normal strength bilaterally in the upper extremities, with intact sensation, and range of motion within normal limits. (Tr. 24). The ALJ again included limitations to frequent handling, fingering, and feeling in the RFC to accommodate this condition. (Tr. 24).

The ALJ also discussed Plaintiff migraine history, but found that the migraines were controlled with medication and an MRI of the brain was normal. (Tr. 24). The ALJ included environmental limitations in the RFC to accommodate this condition as well as Plaintiff's asthma. (Tr. 24).

Lastly, the ALJ discussed Plaintiff's overactive bladder and incontinence. (Tr. 24). The ALJ noted that Plaintiff has both stress and urge incontinence. (Tr. 24). The ALJ included limitations in the RFC for easy access to a restroom, with restroom breaks every 50 minutes, for 5 minutes at a time to accommodate this condition. (Tr. 24).

Taking the decision as a whole, the ALJ considered Plaintiff's impairments and then considered whether the record evidence supported Dr. Perez-Padilla's severe limitation findings. Even though the ALJ found Dr. Perez-Padilla's severe limitation findings unpersuasive, the ALJ nonetheless repeatedly accommodated the limitations she found supported by the evidence in the RFC. The ALJ concluded that Dr. Perez-Padilla's severe limitation findings were inconsistent with her own treatment records and unsupported by other medical evidence of record. Substantial evidence supports the ALJ's finding that Dr. Perez-Padilla's opinion was unpersuasive.

### B. John Berg, Ph.D.'s Opinion

Plaintiff argues that the ALJ did not sufficiently evaluate Dr. Berg's opinion. (Doc. 14, p. 8).[2] In March 2020, Dr. Berg completed a Mental Impairment Questionnaire. (Tr. 2097-2100). He explained that he had been treating Plaintiff from May 3, 2019 through March 12, 2020, and had five contacts with her. (Tr. 2097). He diagnosed Plaintiff with Post-Traumatic Stress Disorder ("PTSD") and Major Depressive Disorder ("MMD"), recurrent episodes, moderate. (Tr. 2097).

In the decision, the ALJ considered Dr. Berg's opinion and found it not persuasive.

> John Berg, Ph.D. opined the claimant had marked to extreme mental limitations, and would miss more than four days of work per month. (Exs. 19F; 42F). This is not persuasive. The opinion is not supported; Dr. Berg merely checked off boxes on a form rather than provide an explanation for the limitations given. The marked limitations utilize the prior paragraph B criteria, which is not the standard we currently use to evaluate disability claims. Moreover, the opinion is overly restrictive in light of objective evidence. The claimant's mood has been stable. She does not require additional intervention or higher level of care. On computerized cognitive testing, the claimant's performance was average to above average on all five cognitive domains. (Ex. 6F/19, 28). Behavior is normal. Thought process is logical and goal directed. Memory and concentration are adequate. (Exs. 6F/35; 27F/52, 79, 85, 132).

---

[2] The Commissioner argues as an initial matter that Dr. Berg completed an old version of the psychiatric review techniques. (oc. 15, p, 17). The Commissioner then argues that Dr. Berg assessed the severity of Plaintiff's complaints and did not identify any specific work-related limitations. (Doc. 15, p. 17-18). As a result, the Commissioner asserts Dr. Berg did not render an opinion under the new regulations, 20 C.F.R. § 404.1513(a)(2). (Doc. 15, p. 17). Even though this argument may have merit, the Court evaluated whether substantial evidence supported the ALJ's decision to find Dr. Berg's statements unpersuasive.

(Tr. 27). In sum, the ALJ found Dr. Berg's opinion unpersuasive for three reasons: (1) Dr. Berg merely checked off boxes on a form without an explanation; (2) the form provided did not contain the current paragraph B criteria, rather it contained outdated criteria; and (3) the opinion was overly restrictive given the objective evidence. (Tr. 27).

Plaintiff argues that the ALJ erred in finding that Dr. Berg merely checked boxes on the forms and did not provide an explanation for his opinion. (Doc. 14, p. 10, Doc. 16, p. 8). Plaintiff asserts that on the first page of the questionnaire, Dr. Berg wrote that Plaintiff suffered from PTSD and MMD and Plaintiff was only minimally responsive to treatment. (Doc. 14, p 10). Plaintiff then contends that Dr. Berg noted various clinical findings such as anhedonia, decreased energy and feelings of guilt or worthlessness, as well as other symptoms. (Doc. 14, p, 10). While Dr. Berg did list Plaintiff's diagnoses and that she was only minimally responsive to treatment, Dr. Berg simply checked boxes to identify Plaintiff's signs and symptoms. (Tr. 2097, 2099). Even if these statements constitute a very brief explanation of Plaintiff's condition – which they do not – they certainly do not explain why Dr. Berg found Plaintiff had marked restrictions of activities of daily living and maintaining concentration, persistence, or pace. (Tr. 2098). Nor do they explain why Plaintiff has extreme difficulties in maintaining social functioning. (Tr. 2098). Without some explanation or citation to his own objective clinical findings, Dr.

Berg's extreme and marked limitations are inconsistent with his records. (*See, e.g.*, Tr. 2042-43, 2050, 2396 (Plaintiff was friendly, thought process seemed linear, though content was appropriate, no evidence of psychosis), 2469 (Plaintiff was attentive and engaged throughout group session, had difficulty talking about trauma, was alert and oriented in all spheres, good eye contact, normal speech, calm mood, linear thoughts, goal oriented, intact cognition, and good insight and judgment), 2499-2500 (same), 2502 (same), 3478 (same), 3507, 3516). Substantial evidence supports the ALJ's finding that Dr. Berg's opinion is not supported by his own treatment records.

  Plaintiff also argues that the ALJ erred in finding that Dr. Berg's opinion was inconsistent with the medical evidence of record in that all of the signs and symptoms that Dr. Berg listed in his opinion are documented in Plaintiff's treatment record. (Doc. 14, p. 10). Plaintiff asserts that she has recurrent, involuntary, intrusive, and distressing memories related to a traumatic incident or incidents in her past. (Doc. 14, p. 10, Doc. 16, p, 8). Plaintiff also asserts that she has panic attacks related to a trauma, irritable behavior, hypervigilance, an exaggerated startle response, diminished concentration, and mental status examinations that showed Plaintiff was depressed, anxious, tearful, overwhelmed, worn-out, apprehensive, or frustrated. (Doc. 14, p. 10-11). Plaintiff claims that all these mental status findings are consistent with the clinical signs that Dr. Berg outlined in his opinion. (Doc. 14,

p. 11). Plaintiff acknowledges that at some visits Plaintiff displayed a normal mood and had fewer symptoms, but argues that these isolated visits do not establish that Plaintiff could perform work activity on a consistent basis. (Doc. 14, p. 11).

In the decision, the ALJ cites instances when Plaintiff's behavior was normal, her thought process was logical and goal directed, and her memory and concentration were adequate. (Tr. 27, 854, 861, 2371, 2398, 2404, 2451). Even though the medical records may indicate she has symptoms such as depression, anxiety, or tearfulness, these same medical records show that Plaintiff was cooperative, had logical and coherent thought processes, was oriented in all spheres, and only had mildly impaired attention and concentration. (Tr. 1915). In other medical records noting Plaintiff had more depressed days, was tearful at times, or was anxious, these same records showed she behaved calmly, was cooperative, had good eye contact, was constricted in affect, was congruent with thought content, had normal speech, was articulate, had a linear and coherent thought process, had intact cognition, was oriented in all spheres, and had fair insight and judgment. (Tr. 2057, 2355, 2390, 2408, 2415, 2425, 2439, 2484, 2848, 2915, 2939). Further, as the ALJ noted, on a computerized cognitive test, Plaintiff's performance was average to above average on all five core cognitive domains: verbal memory, visual memory, reaction time, processing speed, and executive function. (Tr. 27, 854). As the ALJ found, Dr. Berg's extreme and marked limitation findings were inconsistent with his

own and other medical records in evidence. Substantial evidence supports the ALJ's finding that Dr. Berg's opinion was inconsistent with and not supported by other medical evidence of record, and thereby unpersuasive.

Moreover, for both opinions, the Court may not decide the facts anew, reweigh the evidence, or substitute its judgment for that of the Commissioner. *Mitchell v. Comm'r, Soc. Sec. Admin.*, 771 F.3d 780, 782 (11th Cir. 2014). Even if the evidence preponderates against the Commissioner's decision, the Court must affirm if substantial evidence supports the Commissioner's decision. *Buckwalter v. Acting Comm'r of Soc. Sec.*, 5 F.4th 1315, 1320 (11th Cir. 2021). Here, the ALJ's decision is supported by substantial evidence and she applied the correct legal standard.

### III.  Conclusion

For the reasons discussed above, the Court finds that the decision of the Commissioner is supported by substantial evidence and the Commissioner applied the correct legal standard. The decision of the Commissioner is **AFFIRMED**. The Clerk of Court is directed to enter judgment consistent with this opinion, terminate all deadlines, and close the case.

**DONE** and **ORDERED** in Fort Myers, Florida on June 2, 2023.

_____
DOUGLAS N. FRAZIER
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Parties